**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x

Cassandra Daly, individually and on behalf of
all others similarly situated,

                Plaintiff,

      v.

Dunkin' Brands, Inc. and Inspire Brands,
Inc.,

              Defendants.

-------------------------------------------------------- x

CASE NO. 3:24-cv-01475-DNH-ML

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S CLASS
ACTION COMPLAINT**

### **TABLE OF CONTENTS**

I.    INTRODUCTION.....................................................................................................1

II.   STATEMENT OF FACTS......................................................................................2

III.  LEGAL STANDARD..............................................................................................3

IV.   ARGUMENTS…………………..…………………………………………….…………………3

    A.    The Reasonable Consumer Standard Applies...........................................3

    B.    The Products' Advertising Misleads Reasonable Consumers................................4

        1.    Plaintiff Adequately Alleges That Reasonable Consumers Understand the Products' Names as Descriptions of Their Ingredients……………………4

        2.    The Menu Boards Contain No Qualifying Language to Alert Consumers That the Fruits Listed in the Products' Names are Merely Flavor Descriptors…………………………………………...……………………7

        3.    Defendants' Reliance on the Vanilla and Honey Cases is Misplaced..….10

        4.    The Context in Which the Products Are Sold Supports Plaintiff's Claims…………………………………………………………………12

    C.    Plaintiff Adequately Alleges Each of Her Causes of Action................................14

        1.    Plaintiff Has Adequately Alleged Injury Under The GBL ……………...15

        2.    Plaintiff Has Plausibly Alleged Her Breach of Warranty Claims ……….18

        3.    Plaintiff Has Pled Her Fraud Claim With Sufficient Particularity………20

        4.    Plaintiff's Unjust Enrichment Claim Is Not Duplicative…………..………21

V.    CONCLUSION......................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
    No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010)....................................18

*Angeles v. Nestle U.S.A., Inc.*,
    632 F. Supp. 3d 309 (S.D.N.Y. 2022)........................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................................3

*Ault v. J.M. Smucker Co.*,
    No. 13-cv-3409, 2014 WL 1998235 (S.D.N.Y. May 15, 2014) ...............................................19

*Axon v. Florida's Nat. Growers, Inc.*,
    813 F. App'x 701 (2d Cir. 2020) ......................................................................................17, 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................................3

*Brown v. Kellogg Sales Co.*,
    No. 1:20-CV-7283-ALC, 2022 WL 992627 (S.D.N.Y. Mar. 31, 2022)................................11

*Buonasera v. Honest Co., Inc.*,
    208 F. Supp. 3d 555 (S.D.N.Y. 2016)......................................................................................19

*Campbell v. Whole Foods Mkt. Grp., Inc.*,
    516 F. Supp. 3d 370 (S.D.N.Y. 2021).........................................................................8, 11, 12

*Chufen Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020)..............................................................................................13, 14

*Chung v. Igloo Prods. Corp.*,
    No. 20-CV-4926 (MKB), 2022 WL 2657350 (E.D.N.Y. July 8, 2022) ..................................17

*Colella v. Atkins Nutritionals, Inc.*,
    348 F. Supp. 3d 120 (E.D.N.Y. 2018) ....................................................................................17

*Colpitts v. Blue Diamond Growers*,
    527 F. Supp. 3d 562 (S.D.N.Y. 2021).................................................................................7, 17

*Cooper v. Anheuser-Busch, LLC*,
    553 F. Supp. 3d 83 (S.D.N.Y. 2021)...................................................................................9, 15

*Daniel v. Mondelez Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ...................................................................17

*Davis v. Pur Co. (USA), Inc.*,
    No. 22-CV-6430L, 2023 WL 3024407 (W.D.N.Y. Apr. 20, 2023) .......................11

*Derbaremdiker v. Applebee's Int'l, Inc.*,
    No. 12-CV-01058 KAM, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012), *aff'd*,
    519 F. App'x 77 (2d Cir. 2013) ............................................................................16

*Donadio v. Bayer HealthCare LLC*,
    No. 6:22-CV-06521 EAW, 2024 WL 1157044 (W.D.N.Y. Mar. 18, 2024) ..........11

*Duncan v. Kahala Franchising, L.L.C.*,
    732 F. Supp. 3d 255 (E.D.N.Y. 2024) ....................................................6, 8, 10, 18

*Duran v. Henkel of Am., Inc.*,
    450 F. Supp. 3d 337 (S.D.N.Y. 2020)....................................................................18

*Elkind v. Revlon Consumer Prod. Corp.*,
    No. 14-cv-2484-JS-AKT, 2015 WL 2344134 (E.D.N.Y. May 14, 2015) ..............21

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)....................................................................................3

*Fishon v. Peloton Interactive, Inc.*,
    No. 19-CV-11711, 2020 WL 6564755 (S.D.N.Y. Nov. 9, 2020).......................9, 15

*Fitzhenry-Russell v. Coca-Cola Co.*,
    No. 5:17-CV-00603-EJD, 2017 WL 4680073 (N.D. Cal. Oct. 18, 2017) ...............8

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    No. 12-MD-2413-RRM-RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ........4

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) .......................................................................19

*Greene v. Gerber Prod. Co.*,
    262 F. Supp. 3d 38 (E.D.N.Y. 2017) .....................................................................17

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020)...........................................................1, 4, 20

*Izquierdo v. Mondelez Int'l, Inc.*,
    No. 16-cv-04697 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)............................16

*Izquierdo v. Panera Bread Co.*,
    450 F. Supp. 3d 453 (S.D.N.Y. 2020)...........................................................6, 8, 15

*Kacocha v. Nestle Purina Petcare Co.*,
No. 15-CV-5489-KMK, 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) ...........................4, 14

*Kominis v. Starbucks Corp.*,
692 F. Supp. 3d 236 (S.D.N.Y. 2023) ............................................................................. *passim*

*Kyszenia v. Ricoh USA, Inc.*,
583 F. Supp. 3d 350 (E.D.N.Y. 2022) .................................................................................16

*Marcus v. AT&T Corp.*,
138 F.3d 46 (2d Cir. 1998) ...................................................................................................3

*Martelli v. Rite Aid Corp.*,
No. 21-CV-10079 (PMH), 2023 WL 2058620 (S.D.N.Y. Feb. 16, 2023) .............................16

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
102 F.3d 660 (2d Cir. 1996).................................................................................................22

*Newman v. Bayer Corp.*,
No. 22-CV-7087 (KMK), 2023 WL 6318523 (S.D.N.Y. Sept. 28, 2023) .............................15

*Nuss v. Sabad*,
No. 7:10-cv-0279-LEK-TWD, 2016 WL 4098606 (N.D.N.Y. July 28, 2016) ......................21

*Oldrey v. Nestle Waters N. Am., Inc.*,
No. 21 CV 03885 (NSR), 2022 WL 2971991 (S.D.N.Y. July 27, 2022) .................................7

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015)..................................................................................................15

*Parham, v. ALDI, Inc.*,
No. 1:19-cv-08975 (PGG) (SDA), 2021 WL 709632 (S.D.N.Y. Feb. 15, 2021) ...................10

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007)...................................................................................................3

*Ruiz v. Celsius Holdings, Inc.*,
No. 3:21-cv-00128-GPC-KSC, 2021 WL 5811264 (S.D. Cal. July 28, 2021)........................6

*Saidian v. Krispy Kreme Doughnut Corp.*,
No. 216CV08338SVWAFMX, 2017 WL 945083 (C.D. Cal. Feb. 27, 2017)..........................5

*Schleyer v. Starbucks Corp.*,
No. 22-CV-10932 (JPO), 2023 WL 5935695 (S.D.N.Y. Sept. 12, 2023) .............................10

*Scholder v. Sioux Honey Ass'n Coop.*,
No. CV 16-5369 (GRB), 2022 WL 125742 (E.D.N.Y. Jan. 13, 2022)....................................4

*Schwartz v. Bai Brands, LLC*,
    No. 19-cv-6249-FMO-RAOx, 2020 WL 5875019 (C.D. Cal. July 31, 2020)..........................6

*Silva v. Smucker Nat. Foods, Inc.*,
    No. 14-CV-6154 JG RML, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ..........................19

*Silva v. Unique Beverage Co., LLC*,
    No. 3:17-CV-00391-HZ, 2017 WL 4896097 (D. Or. Oct. 30, 2017)...................................6, 8

*Swingless Golf Club Corp. v. Taylor*,
    679 F. Supp. 2d 1060 (N.D. Cal. 2009) ...............................................................................20

*Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.*,
    No. 14-cv-9992-SAS, 2015 WL 4190746 (S.D.N.Y. July 10, 2015) .....................................21

*Turnipseed v. Simply Orange Juice Co.*,
    No. 20 Civ. 8677 (NSR), 2022 WL 657413 (S.D.N.Y. Mar. 4, 2022) ...................................11

*Warner v. StarKist Co.*,
    No. 1:18-cv-406-GLS-ATB, 2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019).........................21

*Warren v. Stop & Shop Supermarket, LLC*,
    592 F. Supp. 3d 268 (S.D.N.Y. 2022)............................................................................11, 12

*Wright v. Publishers Clearing House, Inc.*,
    439 F. Supp. 3d 102 (E.D.N.Y. 2020) .................................................................................16

## Statutes

N.Y. GBL § 349.............................................................................................15, 18, 19, 21

N.Y. GBL § 350....................................................................................................................18

N.Y. U.C.C. § 2-314(2)(c) ...................................................................................................19

N.Y. U.C.C. § 2-314(2)(f)....................................................................................................19

## Other Authorities

Fed. R. Civ. P. 8(a)(3)..........................................................................................................21

Fed. R. Civ. P. 9(b) .............................................................................................................20

Fed. R. Civ. P. 12(b)(6).........................................................................................................3

## I.    INTRODUCTION

The main argument that Dunkin' Brands, Inc. and Inspire Brands, Inc. ("Defendants" or "Dunkin'") present in their Motion to Dismiss ("Motion") is that no reasonable consumer would believe that their fruit Refresher beverages actually contain the ingredients plainly stated in their names. However, this argument is directly at odds with *Kominis v. Starbucks Corp.*, 692 F. Supp. 3d 236 (S.D.N.Y. 2023), a recent New York district court decision resolving the same questions before this court now. Specifically, in *Kominis*, the court found that reasonable consumers could be deceived into believing that Starbucks' "Refreshers" contained the fruits listed in the products' names, such as in fruit juice form. As further outlined below, *Kominis* follows various similar decisions involving food products sold at fast-casual restaurants.

Nonetheless, Defendants argue that reasonable consumers would necessarily understand the products' names to be merely flavor descriptors, based on factors such as the quick service nature of Dunkin's stores, the products' prices, the products' images, and the product category name ("Refreshers"). However, each of these arguments has been rejected before. Moreover, Defendants' position is farfetched and relies on significant untested assumptions – e.g., that consumers would read the word "flavor" into the product names – that should not be made or accepted at this stage. Indeed, nowhere on Dunkin's menu boards does it state that the ingredient names refer to the ***flavor*** (e.g. "Mango Pineapple Flavor") and not the ingredients in the products. As the Court is aware, only in "rare" situations where a consumer cannot plausibly be misled should a motion to dismiss on such grounds be granted. *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020). As explained herein, this is not one such situation.

Defendants' remaining arguments concerning the failures of Plaintiff's warranty, unjust enrichment and common law fraud claims are similarly without merit. Each is a throwaway argument premised almost entirely on the claim that Plaintiff has not alleged sufficient facts to maintain her claims. As discussed in more detail herein, the Motion should be denied in its entirety.

## II.    STATEMENT OF FACTS

This putative class action seeks to challenge Defendants' false and deceptive practices in the marketing, advertising, and sale of its Dunkin' fruit Refreshers sold at Dunkin's brick and mortar locations. Pl.'s Class Action Compl. ("CAC") (ECF No. 1), ¶ 1. The products at issue in this case include: Defendants' (1) Mango Pineapple Refresher; (2) Strawberry Dragonfruit Refresher; (3) Peach Passionfruit Refresher; (4) Blueberry Pomegranate Refresher; (5) Apple Cranberry Refresher; (6) Raspberry Watermelon Refresher; and (7) Mixed Berry Beats Refresher (collectively, the "Product(s)"). *Id*. ¶ 2. During the relevant class period, Defendants have marketed the Products with the names of specific fruits, representing to consumers that the Products, which are supposed to be fruit-based beverages, contain those named fruits. *Id*. ¶ 14. Despite the name of each Product, and unbeknownst to consumers, the Products are missing the ingredient plainly stated in their name (e.g., the Mango Pineapple Product contains ***no mango*** and ***no pineapple***, the Strawberry Dragonfruit Product contains ***no strawberry*** and ***no Dragonfruit,*** etc.). *Id*. ¶ 17.

Plaintiff and other consumers purchased the Products for a premium price based upon their reliance on Defendants' representations, reasonably believing that the advertised fruits in the names of each Product were actually in each Product. *See id*. ¶¶ 4, 5, 25. Had Plaintiff and other consumers been aware that the Products are missing the specified fruits, they would not

have purchased them or would have paid significantly less for them. *Id*. Accordingly, Plaintiff and other consumers have been injured by Defendants' deceptive business practices. *Id*. ¶¶ 4, 26.

## III.    LEGAL STANDARD

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept the complaint's factual allegations, and all reasonable inferences that can be drawn from those allegations in the plaintiff's favor, as true." *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007). The notice pleading standard of the Federal Rules "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## IV.    ARGUMENT

### A.    <u>The Reasonable Consumer Standard Applies</u>

Plaintiff's General Business Law ("GBL") claims are governed by the reasonable consumer standard. *Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998). Under that standard, *at trial*, a plaintiff must only show that consumers are likely to be deceived. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). Therefore, at this juncture, dismissal is only appropriate in "rare situation[s]," and only if viewing the facts in the light most favorable to plaintiff, it is "'***impossible*** for the plaintiff to prove that a reasonable consumer was likely to be deceived.'"

*See Hesse*, 463 F. Supp. 3d at 467 (emphasis added) (citing *Williams v. Gerber Prod. Co.*, 552 F.3d 934 (9th Cir. 2008)).

For these reasons, New York courts have recognized that "[u]sually, the reasonable consumer inquiry is a question of fact not suited for resolution at the motion to dismiss stage." *Scholder v. Sioux Honey Ass'n Coop.*, No. CV 16-5369 (GRB), 2022 WL 125742, at *3 (E.D.N.Y. Jan. 13, 2022) (citation omitted); *see also Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489-KMK, 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) (holding that "ample case law exists allowing § 349 claims over allegedly deceptively labeled consumer goods to progress beyond the motion-to-dismiss stage, largely based on the view that the question of what might deceive the reasonable consumer is a question of fact") (collecting cases).

Thus, for Defendants' motion to dismiss to be granted, Defendants must meet the "heavy burden of 'extinguish[ing] the possibility' that a reasonable consumer could be misled." *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413-RRM-RLM, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (citation omitted).

### B.    The Products' Advertising Misleads Reasonable Consumers

1.    <u>Plaintiff Adequately Alleges That Reasonable Consumers Understand the Products' Names as Descriptions of Their Ingredients</u>

This is not one of those "rare situations" where it is "impossible" for reasonable consumers to be deceived into believing that the Products contain the fruits listed in their names. *Hesse*, 463 F. Supp. 3d at 453. The names of specific fruits appear plainly on Dunkin's menu boards in the name of each Product, without ***any*** qualifying language, such as "flavored" (e.g., "Strawberry Dragonfruit *Flavored*"). As such, consumers reasonably expect that the "Strawberry Dragonfruit" Product contains both strawberry and dragon fruit, that the "Mango Pineapple"

4

Product contains both mango and pineapple, and so forth.[1]

While Defendants contend that the fruits called out in the name of the Products are not "actionable misrepresentations" (Mot. at 6) and that Plaintiff could not have expected premium ingredients because Dunkin' is a quick service restaurant (Mot. at 11), there is on-point authority in which a nearly identical product name was found to plausibly deceive reasonable consumers in a quick service restaurant: Starbucks "Refreshers."

*Kominis* is on all fours. In *Kominis*, the plaintiffs argued that the naming of Starbucks' Refresher beverages on its in-store menu boards misled reasonable consumers into believing the beverages contained all the named fruits. *Kominis*, 692 F. Supp. 3d at 241. There, the challenged beverages were similarly advertised with product names that identified specific fruits, e.g., "Strawberry Açaí Starbucks Refresher" or "Mango Dragonfruit Starbucks Refresher." *Id*. Like Defendants' Products, Starbucks did not describe the products as "made with," "containing" or "infused with" any particular fruit, yet the court found it "plausible that a reasonable consumer purchasing a fruit drink, like one of the Starbucks Refreshers, is likely to expect that the drink actually contains the fruit mentioned in the drink's name." *Id.* at 249.

*Kominis* is not an isolated case. Rather, there are numerous authorities which echo *Kominis*' holding that consumers can plausibly expect the ingredients plainly stated in a product name, even in a quick service restaurant setting. *See, e.g., Saidian v. Krispy Kreme Doughnut Corp*., No. 216CV08338SVWAFMX, 2017 WL 945083, at *3 (C.D. Cal. Feb. 27, 2017) ("It is plausible that Plaintiff will be able to show that reasonable consumers believe that 'Raspberry-

---

[1] Defendants argue that no consumer could be deceived by the "Mixed Berry" Product because the name does not promise a specific berry. However, it is reasonable for consumers to understand "Mixed Berry" to mean that the product contains at least some berries, and not just processed flavors that mimic the taste of berries.

Filled' doughnuts are filled with raspberries, 'Maple Iced Glazed' and 'Maple Bar' doughnuts contain maple syrup or maple sugar, and 'Glazed Blueberry Cake' doughnuts contain actual blueberries."); *Duncan v. Kahala Franchising, L.L.C.*, 732 F. Supp. 3d 255, 267 (E.D.N.Y. 2024) (finding the consumers could be plausibly misled into believing that Cold Stone's "Pistachio" ice cream was made with real pistachios based on the product's name); *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461-462 (S.D.N.Y. 2020) (finding that plaintiff plausibly alleged that, based on Panera Bread's in-store naming of its "Blueberry Bagel" product, a "reasonable consumer is likely to be misled into believing that the Bagel's blueberry content consists solely of real blueberries, when in fact the Bagel contains primarily imitation blueberries with a lesser quantity of real blueberries).

This reasoning is not limited to quick service restaurant products, but also other beverages which promise fruit-based ingredients. *See Schwartz v. Bai Brands, LLC*, No. 19-cv-6249-FMO-RAOx, 2020 WL 5875019, at *4 (C.D. Cal. July 31, 2020) (holding that beverages named "Antioxidant Cocofusion Andes Coconut Lime" could be expected to contain coconut and lime.); *Ruiz v. Celsius Holdings, Inc*., No. 3:21-cv-00128-GPC-KSC, 2021 WL 5811264, at *6 (S.D. Cal. July 28, 2021) ("Plaintiffs maintain here that the front of the packaging includes a name and picture of fruit, which plausibly suggests that a reasonable consumer may be deceived into thinking the beverage contains fruit."); *Silva v. Unique Beverage Co., LLC*, No. 3:17-CV-00391-HZ, 2017 WL 4896097, at *5 (D. Or. Oct. 30, 2017) (same).

Similar to Starbucks' "Mango Dragonfruit Starbucks Refreshers," Krispy Kreme's "Glazed Blueberry Cake" doughnuts, Cold Stone's "Pistachio" Ice Cream, and Panera's "Blueberry Bagel," reasonable consumers expect that Defendants' Products each contain their advertised fruits. Thus, it is reasonable for consumers to expect fruits like mango and pineapple

to be in their beverages when Defendants explicitly call them out.

    2.    <u>The Menu Boards Contain No Qualifying Language to Alert Consumers That the Fruits Listed in the Products' Names are Merely Flavor Descriptors</u>

Defendants contend that the menu boards "make no promises about whether the Refreshers contain fruit ingredients," but they merely denote the "flavors" of the Products. Mot. at 8. Defendants' self-serving position is implausible, given that Defendants' advertising does nothing to disclaim or clarify that the fruit names are merely flavors, such as by using a flavor qualifier (e.g., "Mango Pineapple ***Flavored***"). *See Kominis*, 692 F. Supp. 3d at 247 ("Unlike in some cases, no information in the name or advertising for the Products affirmatively informs the consumer whether a fruit name indicates a flavor or ingredient. For instance, a Product is not named 'Açaí-Flavored Strawberry Starbucks Refresher' or 'Mango-Flavored Dragonfruit Starbucks Refresher' or 'Passionfruit-Flavored Pineapple Starbucks Refresher.'"); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 581 (S.D.N.Y. 2021) ("nothing else on the front of the packaging would alert consumers that the 'Smokehouse®' label refers only to the almonds' flavor, rather than the flavoring process, such as words like 'smoky flavor.'").

Defendants rely heavily on *Angeles v. Nestle U.S.A., Inc.*, 632 F. Supp. 3d 309 (S.D.N.Y. 2022), however, *Angeles* only supports Plaintiff's position. Mot. at 6-7. In *Angeles*, the product's front label explicitly stated that the product was "***flavored*** mineral water." *Id.* at 316 (emphasis added). Similarly, in *Oldrey v. Nestle Waters N. Am., Inc.*, No. 21 CV 03885 (NSR), 2022 WL 2971991 (S.D.N.Y. July 27, 2022), cited by Defendants (Mot. at 8), the challenged label explicitly described the products as "NATURALLY ***FLAVORED*** SPRING WATER." *Oldrey*, 2022 WL 2971991, at *1 (emphasis added). No such disclaimers are present on any of the menu board advertising of the Products, or on any of the in-store advertising of the Products. *See* CAC

¶ 15 (showing an image of the Dunkin' menu board that notably does not describe the Products as flavored or the advertised fruits as flavors).

The absence of the words "made with" or "contains" does not warrant a different result. As stated above, courts recognize that plainly advertising ingredients in a product name can plausibly mislead reasonable consumers. The *Campbell* court addressed this issue directly, rejecting the very same argument: "the front label of the product at issue did not say that the crackers were 'made with' graham—whole wheat flour. But the absence of those words is not dispositive." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 382 (S.D.N.Y. 2021). Other courts have denied motions to dismiss where the challenged advertising merely calls out an ingredient by name. *See, e.g., Izquierdo*, 450 F. Supp. 3d at 462 ("Blueberry Bagel"); *Duncan*, 732 F. Supp. 3d at 259 ("Pistachio" ice cream); *Kominis*, 692 F. Supp. 3d at 251 (e.g., "Strawberry Dragonfruit Refreshers.") Thus, the lack of "made with" language on the in-store advertising does not preclude a finding that consumers can plausibly be deceived.

Moreover, even if Defendants were correct that consumers see the fruit names of the Products as flavors, it is clearly plausible that reasonable consumers would interpret the fruit names as a reference to the Products' fruit flavors **and** ingredients, such that the fruit flavors are derived from actual fruit in the Products. *Campbell*, 516 F. Supp. 3d at 385 ("[E]ven if 'honey' were intended solely as a reference to the flavor of the Product, a reasonable consumer could expect that the source of the honey flavor was actual honey—an ingredient."); *Silva*, 2017 WL 4896097, at *5 (holding that when the word "coconut" is not immediately qualified with "naturally flavored" "a reasonable consumer could understand that he or she was purchasing a drink containing coconut and which also was naturally flavored"); *Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-CV-00603-EJD, 2017 WL 4680073, at *4 (N.D. Cal. Oct. 18, 2017)

("Furthermore, even if the chemical compound used to flavor the Product has trace amounts of ginger in it, the statement 'Made With Real Ginger' is actionable because Plaintiff has alleged that the statement is likely to deceive reasonable consumers into believing that the Product is flavored with and contains real ginger.")

At the very least, to the extent the Court finds that Defendants have set forth one interpretation of their advertising, because Plaintiff has set forth an equally plausible (if not more plausible) interpretation of the advertising, the Court should defer to Plaintiff's reading at this stage. *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83 (S.D.N.Y. 2021) is instructive in this regard. In *Cooper*, the plaintiff alleged that the product names "Sparkling Margaritas", "Sangria Spritz Sparkling Sangria Cocktails", and "Mojito Fizz Sparkling Cocktails," plausibly mislead reasonable consumers into believing the products contain real spirits and wines (e.g., the Margaritas would contain tequila). *Id.* at 102. "In response to Plaintiffs' allegations, Defendant suggest[ed] an alternative interpretation of the Products' labeling": that reasonable consumers would "understand that the references to margaritas, mojitos[,] and the like are merely a flavor designator, not an ingredient claim." *Id.* (internal citations omitted). The court found that ***even if*** it found the defendant's alternative interpretation to be plausible, "at the motion-to-dismiss stage, '[w]here a representation is capable of two possible reasonable interpretations,' the Court is not free to reject 'the misleading one . . . simply because there is an alternative, non-misleading interpretation.'" *Id.* at 97 (citing *Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711, 2020 WL 6564755, at *7 (S.D.N.Y. Nov. 9, 2020)). Rather, "Defendant[s] will have an opportunity to test that hypothesis in discovery." *Id.* at *6-7.

3.   Defendants' Reliance on the Vanilla and Honey Cases is Misplaced

Defendants also attempt to invoke the now-dubbed Vanilla Cases, and the cases that followed, to contend that all ingredients fall into the same category, and thus consumers would reasonably expect the missing fruits in the Products to be mere flavors, not ingredients. Mot. at 7.

That is not the case, as courts recognize that the Vanilla Cases are in their own category and do not extend to products that promise ingredients such as fruits. Indeed, application of the "Vanilla Cases" was expressly rejected by the court in *Kominis*, 692 F. Supp. 3d at 249-250. There, the court reasoned that "***in contrast with the use of the term 'vanilla,'*** which has been the subject of several prior cases, nothing before the Court indicates that 'mango,' 'passionfruit,' and 'açaí' are terms that typically are understood to represent a flavor without also representing that ingredient." *Id.* (emphasis added); *see also Duncan*, 732 F. Supp. 3d at 259 (finding that the "Vanilla Cases" did not warrant dismissing plaintiff's claims as to the pistachio product).[2] Here, the missing ingredients in the Products are not vanilla, or mint, or honey, but fruits commonly used as ***ingredients*** in food products.

Defendants' remaining authorities are a stretch, as they do not involve products remotely similar to the Products at issue here (i.e., fruit-based beverages from restaurants), but products which consumers would not reasonably expect *any* named food-type ingredients in, such as

---

[2] Furthermore, in the Vanilla Cases, consumers could simply look to the back of the product to determine whether it actually contained vanilla bean. Here, there is no readily accessible list of ingredients that reasonable consumers could turn to, if they questioned whether the Products actually contain fruit. *Compare Parham, v. ALDI, Inc.*, No. 1:19-cv-08975 (PGG) (SDA), 2021 WL 709632, at *3 (S.D.N.Y. Feb. 15, 2021) ("A reasonable consumer would understand that the word 'vanilla' on the front of the carton describes how the Product tastes, not what it contains, especially in circumstances where the ingredients listed . . . do not mention vanilla at all."), *with Schleyer v. Starbucks Corp.*, No. 22-CV-10932 (JPO), 2023 WL 5935695, at *3 (S.D.N.Y. Sept. 12, 2023) ("Furthermore, consumers purchasing a loose bagel in a store are less likely to have access to a separate ingredient list, and therefore the ingredient list is less likely to dispel any confusion about the product's ingredients.").

medicinal powders and chewing gum. Mot. at 7-8 (citing *Donadio v. Bayer HealthCare LLC*, No. 6:22-CV-06521 EAW, 2024 WL 1157044, at *4 (W.D.N.Y. Mar. 18, 2024) ("A reasonable consumer would also consider whether the Product—a medicinal <u>powder</u>—is one that would be expected to contain a more than de minimis amount of lemon (or lemon zest) and honey"); *Davis v. Pur Co. (USA), Inc.*, No. 22-CV-6430L, 2023 WL 3024407, at *4 (W.D.N.Y. Apr. 20, 2023) (dismissing plaintiff's claim because, in the context of a peppermint chewing gum product, "the word 'peppermint,' like the word 'vanilla,' can be used and commonly understood to refer to a product's scent or flavor")).

Moreover, in the remaining cases relied on by Defendants the products actually contained the challenged ingredient. *See, e.g., Brown v. Kellogg Sales Co.*, No. 1:20-CV-7283-ALC, 2022 WL 992627, at *1 (S.D.N.Y. Mar. 31, 2022) (emphasis added) (challenging a product's labeling for "giv[ing] consumers the impression the fruit filling contains ***more strawberries*** than it does"); *Turnipseed v. Simply Orange Juice Co.*, No. 20 Civ. 8677 (NSR), 2022 WL 657413, at *2 (S.D.N.Y. Mar. 4, 2022) (emphasis added) (representing "a class of consumers who bought the Product expecting it would have ***more of the named ingredient***, vanilla, than it did").

Defendants' reliance on *Warren v. Stop & Shop Supermarket, LLC*, 592 F. Supp. 3d 268 (S.D.N.Y. 2022) is also misplaced. In *Warren*, the court reasoned that:

> [T]he label here depicts the word "honey" in a smaller white font with an orange background immediately below the words "Graham Crackers" in a larger blue font—which suggests that the term "honey" is subordinate to "Graham Crackers." Therefore, the Court concludes that a reasonable consumer would associate the "honey" "label with the Product's flavor and not as a particular ingredient, much less the predominant one.

*Id.* at 279. Additionally, *Warren* deviates from other, more apt, cases out of the Second Circuit. In fact, the *Warren* court specifically distinguished the case from *Campbell*, explaining that "the *Campbell* court concluded that the label's design suggested that honey was an ingredient, not just

11

a flavor." *Id.* (citing *Campbell*, 516 F. Supp. 3d at 385). The same result as *Campbell* should follow here because Defendants do not advertise the name as in *Warren* – i.e., the represented fruits are not presented in a smaller or less conspicuous manner that may alert a consumer that it may be a flavor instead of an ingredient. Rather, like in *Campbell*, the Products are simply named, for example, "Mango Pineapple" and the names use the exact same font and size as other ingredients that are actually included in the Products such as "Green Tea" and "Coconutmilk". CAC ¶ 15; *see Campbell*, 516 F. Supp. 3d at 385 ("The word 'honey' is written directly above the word 'graham' in the same size, font, and color, putting the words in visual parity with each other").

### 4.    The Context in Which the Products Are Sold Supports Plaintiff's Claims

Defendants attempt to distinguish this case from *Kominis* by making this case solely about *pieces* of fruit, when fruit can come in many forms **such as juice**. This argument is not only disingenuous and belies common sense, but it is also contradicted by the Complaint and by the court's opinion in *Kominis*. Mot. at 8, n.6. Defendants misunderstand *Kominis*. In *Kominis*, only **one** of the named fruits was available in each product as diced fruit, and that fruit was not at issue in the case. *Kominis*, 692 F. Supp. 3d at 241. It was the other named fruit (e.g., the acai in Strawberry Acai Refresher) that was at issue in the case and the lack of which led the court to find that reasonable consumers could be misled, as they could expect the fruit **in a non-piece form, such as juice.** *Id.* at 247. Indeed, the *Kominis* court explicitly held that "fruit may be present in a drink in a non-visible form, such as a juice." *Id.* at 248. Additionally, in *Kominis*, none of the missing fruits were depicted in the products' images. *Id.* As such, reasonable consumers can expect that the Products contain the named fruits' **juice or puree**, which would

not be readily discernable in images. Therefore, it is not unreasonable for consumers to expect to receive the actual named fruits for which they are paying.

Defendants also argue that "[e]ven the name of the product category here— 'Refreshers'—is the sort of fanciful claim that no reasonable consumer would rely on." Mot. at 8. Not so. First and foremost, unlike "Froot" (a fictitious word invented by marketers that signals to consumers that the products do not contain real fruit) the Products do not use fanciful names as Defendants suggest. *Id.* (citing *McKinniss v. Kellogg USA*, No. CV 07-2611 ABC (RCx), 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007)). Indeed, the court in *Kominis* recognized that although some fanciful names, such as the "Pink Drink" or "Dragon Drink" may "not indicate the presence of actual fruit in the drink" the Starbucks "***Refreshers***" did not suffer the same flaw. 692 F. Supp. 3d at 248 (emphasis added). The same is true for the Products. Second, the remainder of the menu board further supports Plaintiff's argument. Indeed, immediately below the Products on the menu are the following drinks: Strawberry Coolatta, Hot Chocolate, Matcha Latte. CAC ¶ 15. Consumers rightfully expect these drinks to contain their named ingredients. CAC ¶ 19 (alleging that "Dunkin's 'Strawberry Coolatta®' contains 'Strawberry Puree Concentrate,' its hot chocolate contains cocoa, its matcha lattes contain matcha . . . "). Taking Defendants arguments at face value, Dunkin' would categorize their customers as unreasonable for expecting cocoa in their hot chocolate or matcha in their matcha latte. Such a categorization would be untenable. When a menu calls out to a specific ingredient, consumers expect it.

Defendants also rely heavily on *Chufen Chen v. Dunkin' Brands, Inc*., where the plaintiff alleged that Dunkin's "Angus Steak & Egg Breakfast Sandwich" falsely represented the product as containing an intact strip of steak. 954 F.3d 492, 495 (2d Cir. 2020). There, the court made

clear that no reasonable consumer would be misled when "[a]ll three advertisements, however, conclude with multiple zoomed-in images that *clearly depict the* "*steak*" *in the Products as a beef patty.*" *Id.* at 500-01 (emphasis added). Unlike *Chen*, where the image of the product clearly dispelled any misconceptions, the images of the Products here show a beverage that could easily contain juice or puree from the named fruits. Moreover, each of the Products is colored to appear as if the Products contained some amount of juice or puree from all the named fruits. *See* CAC ¶ 15 (depicting an image of an orange-colored beverage below the Product's name, the "Mango Pineapple Refresher"). Thus, even if a consumer saw images of the Products found on some in-store Dunkin' menu boards, this would not dispel consumer confusion as the consumer could rightfully expect the ***juice or puree*** of the missing fruit, as opposed to pieces of fruit.[3] This is not an outlandish assertion given the nature of the Products as liquid beverages, and as recognized by *Kominis*. For this reason, *Chen* is factually inapposite.

Regardless, Defendants' arguments rely on untested assumptions about consumer behavior and expectations. These questions involve rigorous factual inquiries that are not appropriate for resolution at this stage. *Kominis*, 692 F. Supp. 3d at 252 (quoting *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020)) ("[T]he question of whether a representation is materially misleading 'is generally a question of fact not suited for resolution at the motion to dismiss stage.'"); *Kacocha*, 2016 WL 4367991, at *15 ("[A]s a general proposition, '[t]he question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss[.]'")

---

[3] Moreover, in *Chen* it was an "undisputed fact that the Products do in fact contain 'Angus beef.'" *Chen*, 954 F.3d at 501. Here, it is undisputed that the Products ***do not*** contain the named fruits.

C.    **Plaintiff Adequately Alleges Each of Her Causes of Action**

1.    Plaintiff Has Adequately Alleged Injury Under The GBL

Defendants contend that "Plaintiff's conclusory allegations that she would not have purchased the Refreshers beverages do not [] plausibly allege a cognizable injury." Mot. at 14. Not so. Plaintiff has alleged that, "[h]ad she known that the Products did not contain the named fruits, she would not have purchased them, or would have paid significantly less for them" and that "Plaintiff and other consumers purchased the Products and paid a premium price based upon their reliance on Defendants' naming of the Products." CAC ¶¶ 4-5. As several courts have recognized, such allegations are sufficient, ***at the pleading stage***, to allege an injury based on a price premium theory. For example, in *Cooper*:

> Plaintiffs allege[d] that they paid more for the Products "based on the beverage names . . . , reasonably believing that the Products [would] contain tequila, rum, or wine." They also allege[d] that if they had known the Products did not contain tequila, rum, or wine, they would have paid less for the Products or would not have purchased them at all. [The court held that:] At this stage of the case, these allegations suffice to allege a price premium theory of injury.

554, F. Supp. 3d at 109 (internal citations omitted) (citing *Fishon*, 2020 WL 6564755, at *11).

Indeed, the Second Circuit and New York courts have consistently held that a plaintiff may adequately plead injury under the GBL by alleging that she would not have purchased the product (or would have paid less) but for the defendant's deceptive conduct. *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (collecting cases) (finding that "the issue of 'price premium' was relevant because it showed that plaintiffs paid more than they would have for the good but for the deceptive practices of the defendant-sellers"); *Izquierdo*, 450 F. Supp. 3d at 464 ("One way to demonstrate [injury]—but not the only way—is to allege payment of a 'price premium,' whereby a plaintiff pays more than she would have but for the deceptive practice."); *Newman v. Bayer Corp.*, No. 22-CV-7087 (KMK), 2023 WL 6318523, at *4 (S.D.N.Y. Sept. 28,

2023) (finding allegations that plaintiff would not have purchased the product or would have paid less for it, but for defendant's false and misleading representation "suffic[ient] to allege a price premium theory of injury") (citation omitted).

Defendants' citations to decisions that found no injury are easily distinguishable. In those cases, the plaintiffs failed to allege that they paid more for the product due to the misrepresentations. In fact, Defendants' own cases acknowledge that "[a]n injury under §§ 349 and 350 therefore may be alleged under a price premium theory whereby a plaintiff claims to have paid more for the product than he or she would have paid if the defendant did not engage in allegedly deceptive practices." *Martelli v. Rite Aid Corp.*, No. 21-CV-10079 (PMH), 2023 WL 2058620, at *4 (S.D.N.Y. Feb. 16, 2023); *see also Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 114 (E.D.N.Y. 2020) (citing *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016)) ("To succeed on this theory, the Plaintiffs must allege that 'on account of a materially misleading practice, [they] purchased a product and did not receive the full value of [their] purchase.'")).

Defendants further rely on two sweepstake cases, *Wright* and *Derbaremdiker* which are distinguishable as the plaintiffs did not allege that they paid a price premium. *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-01058 KAM, 2012 WL 4482057, at *7 (E.D.N.Y. Sept. 26, 2012), *aff'd*, 519 F. App'x 77 (2d Cir. 2013) (finding no cognizable injury where plaintiff only alleged that he "received less than the represented value" but not that he would have paid less but for defendant's conduct); *Wright*, 439 F. Supp. 3d at 115 ( "Plaintiffs articulate nothing defective about the products they received . . . making their claims distinguishable from cases where consumers allege damages based on the absence of a desirable material quality from a product."); *see also Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350 (E.D.N.Y. 2022) (finding

16

no cognizable injury where the plaintiff was given the challenged product as a gift and thus did not pay any price premium); *see also Chung v. Igloo Prods. Corp.*, No. 20-CV-4926 (MKB), 2022 WL 2657350, at *10 (E.D.N.Y. July 8, 2022) (alleging that plaintiff "would not have purchased the Product" but failing to allege that plaintiff would have paid less for the product but for the misrepresentation).

Lastly, Defendants' argument that Plaintiff's claim fails as a matter of law because she "has not pled facts demonstrating that she overpaid for the Refreshers, or paid more than she otherwise would have, because of the names 'Mango Pineapple Refresher' or 'Strawberry Dragonfruit Refresher'" Mot. at 15 (citing *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018)), relies on outdated caselaw, as after *Colella*, the Second Circuit and several courts in this District have expressly rejected the need for such allegations. *See Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (holding that plaintiff's "failure to identify the prices of competing products to establish the premium that she paid 'is not fatal to [her] claim' at this stage of the proceedings"); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 198 n.19 (E.D.N.Y. 2018) (noting that weight of authority in Second Circuit "allow[s] complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss"); *Colpitts*, 527 F. Supp. 3d at 578 (finding that defendant was "demanding more than the law requires" by arguing a price premium injury requires plaintiff to allege or identify "(a) the specific price he paid; (b) competitors' products for the price premium; or (c) how those products are purportedly comparable to the [challenged products].").

For these reasons, Defendants' attack is premature, and because Plaintiff has adequately alleged an injury, she should be permitted to conduct discovery and perform a real economic analysis of the price premium. *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 69 (E.D.N.Y.

17

2017) (holding that attacks on plaintiff's price premium allegations "are factual determination[s] that cannot be resolved on a motion to dismiss").

In sum, Plaintiff has adequately alleged an injury under a price premium theory.

### 2.    Plaintiff Has Plausibly Alleged Her Breach of Warranty Claims

Defendants also contend that Plaintiff's express warranty claim should be dismissed because Plaintiff "fails to challenge any express representations." Mot. at 16 (citing *Twohig v. Shop-Rite Supermarkets, Inc.*, No. 20-CV-763 (CS), 519 F. Supp. 3d 154, 167 (S.D.N.Y. 2021) and *Mazella v. Coca-Cola Co*., 548 F.Supp.3d 349, 361 (S.D.N.Y. 2021)). But Plaintiff has alleged that the explicit names of the Products lead reasonable consumers to believe that the Products contain the named fruits. CAC. ¶¶ 14-19, 55. This is sufficient to allege that the names of the Products are factual representations about the Products' ingredients. *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010) ("[T]he statements are not merely exaggerated claims of quality or '[s]ubjective claims about products, which cannot be proven either true or false.' Rather, they describe the contents of a food product in ways consumers might reasonably rely on in choosing to purchase vitaminwater.") (citation omitted); *Duran*, 450 F. Supp. 3d at 349 ("Further, the context of the 'no flakes' representation—a factual representation in the center of the Product's front label— suggests that it is a statement on which a reasonable consumer could rely."). Because Plaintiff has adequately alleged her GBL claim, her express warranty claim survives. *Kominis*, 692 F. Supp. 3d at 252 (S.D.N.Y. 2023) (denying motion to dismiss express warranty claims for the same reasons the court denied plaintiffs' other consumer protection claims); *Duncan*, 732 F. Supp. 3d at 267 (same).

Further, in the context of an express warranty claim—as with a claim under GBL §§ 349–

50—how reasonable consumers interpret a product label is normally "a matter of fact which is not appropriate for decision on a motion to dismiss." *Ault v. J.M. Smucker Co.*, No. 13-cv-3409, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016) (denying motion to dismiss express warranty claim because it "raise[d] a factual matter that [was] not appropriate to resolve on a motion to dismiss"); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) ("[A]s the [c]ourt is unable to determine as a matter of law that the statements are not misleading under GBL § 349, it is equally inappropriate to determine they are not misleading for the [express] warranty claim").

Second, Defendants contend that Plaintiff's implied warranty claim of merchantability fails because it is not based on allegations that the Products are unfit or unsafe for human consumption.  Mot. at 17 (citing *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 JG RML, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015)). Defendants misunderstand Plaintiff's claim for breach of implied warranty. Plaintiff's implied warranty claim is based on N.Y. U.C.C. § 2-314(2)(f), which expressly provides that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." *See* CAC ¶¶ 66-71. N.Y. U.C.C. § 2-314(2)(c) ***separately*** provide that goods must also be "fit for the ordinary purposes for which such goods are used[.]" As such, Plaintiff may allege a breach of warranty under either subsection of the implied warranty statutes. Here, Plaintiff has adequately pled her claim under subsection (2)(f). *See Kominis*, 692 F. Supp. 3d at 252 (allowing plaintiff's implied warranty claim to proceed under N.Y. U.C.C. § 2-314(2)(f) and rejecting defendant's argument "that Plaintiffs have failed to allege their implied warranty claims because the Products were fit for human consumption").

19

Moreover, when an "implied warranty of merchantability cause of action is based solely on whether the product in dispute conforms to the promises or affirmations of fact on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product." *Hesse*, 463 F. Supp. 3d at 470 (internal quotation marks omitted). Because Plaintiff has adequately alleged her claim for breach of express warranty, her claim for implied warranty rises and therefore survives with her express warranty claim.

3.    <u>Plaintiff Has Pled Her Fraud Claim With Sufficient Particularity</u>

Defendants argue that Plaintiff cannot maintain her claim for common law fraud because Plaintiff has failed to meet the pleading standard under Federal Rule of Civil Procedure 9(b). Mot. at 17. Defendants specifically argued that Plaintiff failed to specify "the time, place, speaker, and content of the alleged misrepresentations," "how the misrepresentations were fraudulent[,]" and "details that give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Id.* (quoting *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014)).

However, Plaintiff specifically alleged the time ("In or around July 2023"), the place ("Dunkin's locations in Endicott, New York"), the speaker (Defendant) and the content of the alleged misrepresentations (the misleading Products' names— "Mango Pineapple and Strawberry Dragonfruit"). CAC ¶ 5. Plaintiff has also adequately alleged scienter. *See* CAC, ¶¶ 23-25 (alleging that Defendants knew or should have known that consumers would be deceived by Defendants' advertising of the Products and that Defendants command a price premium as a result of their deceptive marketing practices); *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1067 (N.D. Cal. 2009) (holding that under Rule 9(b), "knowledge need only be alleged

*generally* to state a valid claim for fraud"); *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-cv-2484-JS-AKT, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015) (inferring intent to defraud based on defendant's knowledge that representation was misleading); CAC ¶¶ 23-24 (alleging that Defendants knew the Products' advertising was false as Defendants are the entities responsible for the Products' manufacturing and advertising). Without the benefit of discovery into Defendants' actual state of mind, these allegations are sufficient to allege scienter for a common law fraud claim.

### 4.    Plaintiff's Unjust Enrichment Claim Is Not Duplicative

Defendants also argue that Plaintiff cannot maintain a claim for unjust enrichment, contending that it is duplicative of her other claims.  Mot. at 19.  To the contrary however, "equitable claims for unjust enrichment . . . are not duplicative of her other claims" because a "reasonable trier of fact could find unjust enrichment . . . without establishing all the elements for one of [Plaintiffs'] claims sounding in law." *Nuss v. Sabad*, No. 7:10-cv-0279-LEK-TWD, 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016).  Indeed, "[t]he elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350," and here, Defendants "do[] not argue that [plaintiff] fails          to plausibly allege facts that could support an unjust enrichment claim." *Warner v. StarKist Co.*, No. 1:18-cv-406-GLS-ATB, 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019) (citing *McCracken v. Verisma Sys., Inc.*, No. 6:14-cv-6248, 2017 WL 2080279, at *8 (W.D.N.Y. May 15, 2017)).

Regardless, even if the Court found Plaintiff's unjust enrichment claims to be duplicative of her other claims, Fed. R. Civ. P. 8(a)(3) "expressly permit[s] plaintiffs to plead in the alternative, and the law is well settled in this regard." *Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.*, No. 14-cv-9992-SAS, 2015 WL 4190746, at *5 (S.D.N.Y. July 10, 2015); *see*

*also Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996) (unjust enrichment claim was "properly pleaded as such in the alternative to the contractual claim"); *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 at 706 (2d Cir. 2020) (same).

Thus, Plaintiff's unjust enrichment claim should survive.

## V.    CONCLUSION

For these reasons, Plaintiff respectfully requests the Court deny Defendants' Motion.


DATED: February 25, 2025                   **TREEHOUSE LAW, LLP**

                                                      By: /s/ *Joshua Nassir*

                                                      Joshua Nassir (*admitted pro hac vice*)
                                                      Katherine Phillips *(admitted pro hac vice)*
                                                      3130 Wilshire Blvd., Suite 555
                                                      Santa Monica, CA 90403
                                                      Telephone: (310) 751-5948
                                                      jnassir@treehouselaw.com
                                                      kphillips@treehouselaw.com

                                                      **CUSTODIO & DUBEY, LLP**

                                                      Robert Abiri (SBN 5375449)
                                                      *E-mail: abiri@cd-lawyers.com*
                                                      445 S. Figueroa Street, Suite 2520
                                                      Los Angeles, CA 90071
                                                      Telephone: (213) 593-9095


                                                      *Attorneys for Plaintiff and the*
                                                      *Putative Classes*